IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**MAJOR RICE,** **PLAINTIFF**

v. No. 2:03CV297-GHD-EMB

**WAL-MART STORES, INC.,** **DEFENDANT**

## REPORT AND RECOMMENDATIONS

This matter is before the Court on Defendant's Motion for Summary Judgment [doc. 25] filed on June 7, 2005. The matter has been referred to the undersigned United States Magistrate Judge for issuance of a Report and Recommendation. Having considered the file and record of this case, I find as follows.

### Facts

Plaintiff, a black male, began working at the Cleveland, Mississippi Wal-Mart on April 4, 2001. He worked as a technician in the store's Tire & Lube Express ("TLE") Department. Plaintiff's starting pay was $7.00 an hour. He was hired by Jack West, a Caucasian male, who at the time was Manager of the TLE Department. The General Store Manager was Brian Spaeth and the TLE District Manager was James Harston.

During the course of plaintiff's employment, his direct supervisor in the TLE Department changed several times. Toward the end of his employment, the TLE Manager was Judy Howard, a black female. Plaintiff was given two pay increases in 2001. His hourly rate of pay in December 2001 was $7.50.

In December 2001, the TLE Division of Wal-Mart determined it needed to reduce its workforce in the TLE Department because business was slow. At the time, Wal-Mart had a

policy entitled "Reduction of Workforce Guidelines" that provided guidance to management on who to select for a workforce reduction. Pursuant to this policy, plaintiff and Charlotte Russell, a Caucasian female, were selected for layoff from the TLE Department because they had the least amount of tenure of the employees working in that department.

On December 18, 2001, Brian Spaeth, James Harston and Judy Howard met with plaintiff to discuss a possible transfer to a cashier position in Division 1. Plaintiff tape recorded the conversation with his supervisors. When his supervisors attempted to discuss the details of a transfer with plaintiff, he told them he wasn't "buying it" and refused to discuss the transfer. Plaintiff's supervisors offered him a position as a cashier, but no details about the position, including hourly wage, were ever discussed. After plaintiff refused to discuss the position with store management, he was subsequently discharged for refusing to accept the offer of continued employment.

Management also offered a cashier position to Russell, who accepted and began working as a cashier in Division 1 on December 22, 2001. When Russell began her employment with Wal-Mart in March 2001, her initial hourly wage was $5.40 an hour, and her rate of pay before the lay-off in December was $5.62. Because she was earning less than the established pay for cashiers, she was given a 25¢ an hour raise, bringing her total wage to $5.87 an hour.

On January 10, 2002, plaintiff filed a charge of race and sex discrimination with the EEOC. *See* Charge of Discrimination attached to the Complaint. The Charge alleged that plaintiff's white female co-worker was offered a transfer with a pay raise, while he was offered a transfer to the same department with a pay cut. *Id.* It further alleged that she had the option to accept the transfer or refuse and be laid off, while plaintiff only had the option to accept the

2

transfer or refuse and be fired. *Id*. The EEOC determined it could not conclude that discrimination had occurred, and plaintiff was issued a right to sue letter on June 26, 2003. *See* Notice of Dismissal and Rights attached to the Compl. On September 24, 2003, plaintiff initiated the instant action, wherein he alleges sex and race discrimination and asserts various claims under state law. Defendant filed the instant motion for summary judgment and supporting memorandum on June 7, 2005. The *pro se* plaintiff did not file a response.

### Summary Judgment Standard

Summary Judgment is appropriate under Rule 56 when " . . . the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Wyatt v. Hunt Plywood*, 297 F.3d 405, 409 (5th Cir.2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Washington v. Allstate Ins. Co.*, 901 F.2d 1281 (5th Cir.1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. *Celotex*, 106 S.Ct. at 2553; *see Lujan*, 110 S.Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant

does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Kee v. City of Rowlett Texas*, 247 F.3d 206, 210 (5th Cir.2001). This burden is not satisfied with "some metaphysical doubt as to the material facts," *Matsushita*, 106 S.Ct. at 1356, by "conclusory allegations," *Lujan*, 110 S.Ct. at 3180, by "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir.1994).

The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *See Lujan*, 110 S.Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. *See Evans v. City of Bishop*, 238 F.3d 586, 588-89 (5th Cir.2000).

### **Discussion**

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). The evidentiary framework for Title VII claims was established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A Title VII plaintiff bears the initial burden to prove

4

a *prima facie* case of discrimination by a preponderance of the evidence. *Id*. at 801-03. The elements of a plaintiff's *prima facie* case necessarily vary according to the facts of the case and the nature of the claim. *Id*. at 802, n. 13. To establish a *prima facie case* of discrimination under Title VII, a plaintiff must prove that: (1) he is a member of a protected class; (2) he was qualified for the position that he held; (3) he suffered an adverse employment action; and (4) his employer replaced him with a person who is not a member of his protected class or that others similarly situated were more favorably treated. *Okoye v. Univ. of Tex. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998).

*Disparate Treatment*

Based on the summary judgment evidence of record, the undersigned concludes that plaintiff has failed to make out a *prima facie* case of either sex or race discrimination. As discussed more fully below, there is absolutely no proof in this case that someone outside plaintiff's protected class was treated more favorably than he.

Plaintiff claims Russell was treated more favorably than he following their layoff from the TLE Department because she was offered a transfer with a pay raise and had the option to either accept or refuse and only be laid off, while he was offered a transfer with a pay cut and had the option to either accept or refuse and be fired. However, the evidence shows both plaintiff and Russell were offered positions as cashiers in Division 1 following their layoffs from the TLE Department. Russell received a 25¢ pay increase when she accepted the cashier position because the wages she earned in the TLE Department were less than the required pay scale for cashiers. On the other hand, when store managers approached plaintiff about a transfer to a cashier position, he immediately became defensive and did not give management the opportunity to

5

discuss any terms of the transfer, including pay. At his deposition, plaintiff admitted he repeatedly refused the offer of a cashier position and did not allow management to go into the terms of the transfer because he wasn't buying into their "plot." *See* Plaintiff's Dep. at 87-88. There is simply no proof in this case that management would have cut plaintiff's pay upon his transfer. Plaintiff was already making $1.88 more than Russell at the time of the layoff, and defendant has submitted sworn testimony that it would have allowed plaintiff to stay at his TLE pay rate of $7.50 an hour upon his transfer to a cashier position. And, plaintiff has testified that had he known he would have stayed at his TLE pay, he would not have refused the offer of a transfer. *See* Plaintiff's Dep. at 90-91.

Additionally, there is no competent proof in this case that had Russell refused the offer of work, defendant would have merely laid her off. To the contrary, defendant has presented the affidavit of Brian Spaeth which states that had Russell refused the offer of continued employment, she too would have been terminated.

The undersigned further notes that throughout his deposition testimony, plaintiff was not able to point to any competent evidence which would support his claims of discrimination other than his own "beliefs," "feelings" or "speculations." Plaintiff's subjective beliefs, however, are insufficient as a matter of law, to show that discrimination occurred. *See Grizzle v. The Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir.1994) (plaintiff's own self-serving generalized testimony stating her subjective belief that discrimination occurred held insufficient to support a jury verdict in her favor); *Patton v. United Parcel Serv. Inc.*, 910 F.Supp. 1250, 1263 (S.D.Tex. 1995) (plaintiff may not rely on her own subjective beliefs because subjective beliefs, even if genuine, cannot serve as the basis for judicial relief in a discrimination claim). Thus,

6

because plaintiff cannot prove the fourth element of his *prima facie* case of intentional discrimination, his disparate treatment claim should be dismissed.

*Failure to Promote and Harassment*

In the Complaint, plaintiff alleges failure to promote and supervisor harassment. However, the evidence indicates plaintiff received at least two raises while employed in the TLE Department. Furthermore, there is no evidence in the record of this case that plaintiff was qualified for a promotion. Additionally, plaintiff testified he didn't really have any problems with his supervisors. *See* Compl. at 35-8. Based on this, the undersigned finds plaintiff has neither alleged facts or presented proof sufficient to support either a failure to promote claim or a harassment claim under Title VII. Accordingly, to the extent plaintiff is asserting these claims, they should be dismissed.

*Equal Pay Claim*

In the Complaint, plaintiff wrote there was a "violation of equal pay." However, at his deposition, plaintiff testified that making the claim was a mistake, and it should not have been included in the Complaint. *See* Plaintiff's Dep. at 62. As such, there are no facts to support such a claim, and it should be dismissed.

*State Law Claims*

Plaintiff's state law claims of "abuse of power," intentional infliction of emotional distress and slander should be dismissed as well. As the basis for his "abuse of power" claim, plaintiff testified that James Harston told him that if he didn't sign a document, plaintiff would be a "glitch in the system," and wouldn't get a copy of it. *See* Plaintiff's Dep. at 61. Presumably these directions were given by Harston during the December 2001 meeting with management, as

7

plaintiff admits he tape recorded it. *See id.* The undersigned finds this claim is legally frivolous, as no such cause of action exists under Mississippi law. Thus, plaintiff's abuse of power claim should be dismissed.

For his intentional infliction of emotional distress claim, plaintiff alleges he suffered stress caused by the lack of income after he was discharged. Plaintiff's Dep. at 63-4. As defendant points out in its brief, mere employment disputes of the kind represented here do not fit within the classification of "extreme and outrageous" as required for the tort of intentional infliction of emotional distress under Mississippi law. *See Brown v. Inter-City Fed. Bank for Savings*, 738 So.2d 262, 265 (Miss. 1999). Thus, as plaintiff hasn't so much as made allegations of extreme or outrageous conduct on the part of defendant in this case, the instant claim should be dismissed.

Finally, for his slander claim, plaintiff alleges Brian Spaeth committed the tort of slander after plaintiff's termination, when he allegedly told a job applicant for Wal-Mart that plaintiff had been fired for stealing. Plaintiff's Dep. at 60. Under Mississippi law, the elements of a slander claim are 1) a false statement that has the capacity to injure the plaintiff's reputation; 2) an unprivileged publication; 3) negligence or greater fault on the part of the publisher; and 4) either actionability of statement irrespective of special harm or the existence of special harm caused by publication. *Speed v. Scott*, 787 So.2d 626, 631 (Miss. 2001), quoting *Franklin v. Thompson*, 722 So.2d 688, 692 (Miss. 1998). As defendant points out, assuming plaintiff is able to establish elements 1 through 3, he cannot establish the fourth element. Slander requires proof of "special harm" unless the statements were actionable *per se.* E.g., *Franklin*, 722 So.2d at 692. It merely being published that plaintiff was "fired for stealing" does not fit into any category of

slander that is actionable *per se* under Mississippi law, and plaintiff has brought forth no proof of special damages resulting from the alleged publication. *See Speed*, 787 So.2d at 633-5. Accordingly, plaintiff's slander claim should be dismissed as well.

## **Recommendations**

For all the foregoing reasons, it is recommended that defendant's motion for summary judgment be granted and a judgment in favor of defendant be entered with respect to all of plaintiff's claims.

The parties are referred to Local Rule 72.2(D) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within ten days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted this, the 11th day of August, 2005.

          **/s/ Eugene M. Bogen**
          **U. S. MAGISTRATE JUDGE**